Gregory C. MILLARD, Appellant,

v.

David C. ROACH, Appellee.

No. 88–SP–1323.

District of Columbia Court of Appeals.

Argued Feb. 5, 1992.
Decided Sept. 30, 1993.

Curt S. Hansen, appointed by this court, for appellant.

Rosalyn Calbert Groce, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel and Charles L. Reischel, Deputy Corp. Counsel were on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and WAGNER, Associate Judges.

WAGNER, Associate Judge:

Appellant, Gregory C. Millard, appeals from an order of the trial court denying his petition for a writ of habeas corpus filed pursuant to D.C.Code §§ 16–1901 to –1909 (1989).[1] Appellant, who is serving a sentence imposed by the Superior Court of the District of Columbia (Superior Court), seeks a credit against that sentence for the approximately five years he served incarcerated in the state of Maryland. He also seeks pretrial credit for the period he was incarcerated after revocation of his bond. As reasons for his claim, appellant asserts essentially the following facts: (1) that he was arrested first in the District of Columbia for the offenses which resulted in his convictions and present sentences; (2) that he subsequently entered a plea of guilty and was sentenced by the Maryland court to a period of incarceration to be served concurrently with the sentence imposed in the District of Columbia; (3) that the Maryland authorities admittedly erred in failing to return him to the District of Columbia immediately after sentencing so as to assure him the benefit of concurrent sentences; and (4) that the responsible District of Columbia officials improperly failed to take steps to secure his return, thereby defeating the intentions of both sentencing courts.

 Relying on the case of *Crawford v. Jackson*, 191 U.S.App.D.C. 170, 589 F.2d 693 (1978), *cert. denied*, 441 U.S. 934, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979), the trial court denied appellant's petition. Appellant argues that the interest of justice and comity require that he be granted the credit he seeks. The District of Columbia contends that appellant is not entitled to a credit because, pursuant to 18 U.S.C.

---

1. Appellant filed *pro se* both the petition in the trial court and this appeal. Although appellant filed in the trial court a motion for the appointment of counsel, the record does not reflect that it was ever disposed of. Because of the complexity of the issues raised, this court appointed counsel for appellant after he filed a brief *pro se.*

§ 3568 (1985), he could not and did not commence his District of Columbia sentence until he was released by the Maryland authorities and received at Lorton on October 30, 1985.[2] We conclude that appellant is entitled to the relief under the unique facts of this case. Therefore, we remand for further proceedings consistent with this opinion.

## I.

Appellant Millard is currently at Lorton's Central Facility where he is serving a sentence of sixteen to fifty-four years for several felony convictions.[3] According to Millard's verified petition, he was first arrested in the felony case in the District of Columbia on a criminal complaint on January 25, 1980, at which time there were no outstanding warrants or detainers for him. Thereafter, the Maryland authorities issued a warrant for appellant's arrest. On February 26, 1980, Millard appeared before the Superior Court and agreed to return voluntarily to the state of Maryland to face charges there. On March 26, 1980, prior to disposition of the Maryland case, the Superior Court issued a writ of habeas corpus ad prosequendum to the Maryland officials commanding that they produce Millard on April 10, 1980 for arraignment on the District of Columbia charges. The writ specified that Millard would be returned "upon the conclusion of such proceedings, but not before the conclusion of arraignment." However, appellant remained in custody in the District of Columbia until after he was convicted and sentenced on December 2, 1980. The judgment and commitment order entered by Superior Court ordered appellant's commitment to the custody of the Attorney General, or his authorized representative, for imprisonment. The order further provided:

IT IS FURTHER ORDERED that the Clerk or his deputy deliver a true copy of this order to the United States Marshal and that the copy shall serve as the commitment of the defendant.

The record reflects that the order was delivered that same date as required. Although the trial court recommended that appellant serve his sentence at a federal institution for drug rehabilitation, according to appellant, he was sent instead to the maximum security facility at Lorton, Virginia on December 6, 1980. On December 11, 1980, the United States Marshal caused appellant to be sent to the state of Maryland.

On March 18, 1981, appellant entered a plea of guilty in the Circuit Court for Prince George's County, Maryland to one count of robbery with a deadly weapon. The Maryland court imposed a sentence of ten years incarceration with the provision that it be served concurrent with the sentence previously imposed in the District of Columbia.[4] Nevertheless, appellant was sent to the Maryland state penitentiary where he remained until October 29, 1985. In a letter from the Maryland Division of Corrections to Millard, the Maryland authorities informed him that because he was sentenced in the District of Columbia first he should not have been sent to Maryland and that they had so notified the proper authorities and arranged for his return to

---

**2.** The statute is applicable to persons convicted of any criminal offenses in violation of an Act of Congress, with certain exceptions not pertinent here, triable in any court established by Act of Congress. The sentences rendered in this case by the Superior Court, a court established by an Act of Congress under Article I of the Constitution of the United States of America, *see Lee v. District of Columbia Board of Appeals and Review,* 423 A.2d 210, 215 (D.C.1980), are subject to the provisions of 18 U.S.C. § 3568. *See also* D.C.Code § 23–101(c) (1989) (with limited exceptions, all criminal cases in the District of Columbia are prosecuted in the name of the United States by the United States Attorney for the District of Columbia or assistants).

**3.** Appellant was convicted in the Superior Court in Case No. F–381–80 for the following felonies for which the court imposed the minimum and maximum sentences indicated: two counts of burglary I while armed, five to fifteen years on each count; rape while armed, eight to twenty-four years; and armed robbery, three to ten years. The court ordered the two burglary sentences to be served concurrently, and the remaining sentences, consecutively.

**4.** Appellant was also granted 101 days of credit. The reasons for the credit do not appear on the copy of the Maryland commitment record in the record on appeal.

the federal government upon discovering the error. To assure that appellant would complete the balance of the Maryland sentence if released by the District of Columbia before its expiration, the Maryland authorities lodged a detainer with the District of Columbia Department of Corrections on February 26, 1986.

In his departmental administrative appeal, the District of Columbia officials determined that appellant was a Maryland prisoner on temporary loan to the District of Columbia and that therefore, any time spent in the District of Columbia was credited to his Maryland sentence. They also determined that the time he spent in Maryland was to satisfy his Maryland sentence. Appellant filed *pro se* a writ of habeas corpus outlining these facts with supporting documentation. The trial court, citing *Crawford* concluded that appellant did not commence his District of Columbia sentence until he was actually received at the Lorton facility on October 30, 1985 for service of that sentence. Therefore, the court denied the motion.[5] Appellant noted this appeal.

## II.

Appellant contends that he is entitled to a credit against his District of Columbia sentence for the time he served in the state of Maryland in the interest of justice and as a matter of comity. Absent such a credit, appellant argues, he will be forced to serve an additional five years of imprisonment, contrary to the intentions of both sentencing courts and to the fundamental principles of justice. Undoubtedly, appellant would have received the benefit of concurrency as provided by the Maryland court if he had been returned to this jurisdiction immediately after sentencing in Maryland to serve his District of Columbia sentence. However, the government argues that the controlling statute then in

effect, 18 U.S.C. § 3568, precludes that result on the facts presented here.[6]

The referenced statute provides in pertinent part that:

> The sentence of imprisonment of any person convicted of an offense in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence[s] [are] imposed.... No sentence shall prescribe any other method of computing the term.

18 U.S.C. § 3568. It is the government's position that the plain language of this statute prevented appellant's District of Columbia sentence from commencing until after Maryland surrendered appellant's legal custody to this jurisdiction for enforcement of its sentence. *See Crawford, supra,* 191 U.S.App.D.C. at 172, 589 F.2d at 695; *Burge v. United States,* 332 F.2d 171, 175 (8th Cir.1964), *cert. denied,* 379 U.S. 883, 85 S.Ct. 155, 13 L.Ed.2d 89 (1964). The government contends that since the District of Columbia secured appellant's presence from Maryland pursuant to a writ of habeas corpus ad prosequendum, Maryland's jurisdiction remained uninterrupted until it released appellant to the District of Columbia.

 The essential fact underlying the trial court's decision and reliance upon *Crawford* was that appellant had been brought to this jurisdiction from Maryland for prosecution pursuant to a writ of habeas corpus ad prosequendum. This writ provides the means for one state to secure temporary custody of a prisoner confined in another jurisdiction. *Crawford, supra,*

---

**5.** Although the trial court stated that October 30, 1985 marked completion of appellant's Maryland sentence, the record reflects that appellant was returned to this jurisdiction before the release date for the Maryland sentence after the Maryland officials discovered what they characterized as an error, *i.e.,* appellant's return to Maryland by the District of Columbia after he

was sentenced by the Superior Court and Maryland's failure to return him after sentencing by the Maryland court.

**6.** The repeal of this statute was effective November 1, 1987.

191 U.S.App. D.C. at 172, 589 F.2d at 695; *Flick v. Blevins,* 887 F.2d 778, 781 (7th Cir.1989), *cert. denied,* 495 U.S. 934, 110 S.Ct. 2179, 109 L.Ed.2d 508 (1990); *see generally Carbo v. United States,* 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). After a transfer pursuant to this writ, the accused is considered to be "on loan" to the receiving jurisdiction, thereby leaving the sending state's jurisdiction intact. *Crawford,* 191 U.S.App.D.C. at 173, 589 F.2d at 696; *Flick,* 887 F.2d at 781.

In *Crawford,* the D.C. Circuit held that the failure to return to the sending state a prisoner whose presence had been secured by the receiving state pursuant to a writ of habeas corpus ad prosequendum does not constitute receipt of the individual at the penitentiary or jail for the commencement of sentence within the meaning of 18 U.S.C. § 3568. *Crawford, supra,* 191 U.S.App.D.C. at 172, 589 F.2d at 695. Crawford was on parole from a sentence in the District of Columbia when he was convicted and sentenced for a robbery in the state of Virginia. *Id.* at 171, 589 F.2d at 694. One month prior to the date of the Virginia conviction, Crawford was indicted for additional offenses in the District of Columbia, and the District of Columbia secured his presence to face the new charges by a writ of habeas corpus ad prosequendum. *Id.* Following the imposition of consecutive sentences for the District of Columbia offenses, Crawford remained incarcerated at Lorton serving his parole back up time. *Id.* at 172, 589 F.2d at 695. When he was reparoled from his original District of Columbia sentence on March 3, 1977, the prison officials at Lorton reflected on their records the commencement of Crawford's District of Columbia sentence. *Id.* Some six months later, Crawford was returned to the state of Virginia. *Id.*

The question raised by Crawford's habeas corpus request for double credit for the sentences in both jurisdictions was whether the District of Columbia's failure to return Crawford to Virginia timely and its administrative entries reflecting the commencement of his Superior Court sentence constituted receipt of a prisoner at the "penitentiary, reformatory or jail within the meaning of 18 U.S.C. § 3568." *Id.* at 171–72, 589 F.2d at 694–95. Observing that the District of Columbia's actions did not alter Crawford's borrowed status and that the sending state's jurisdiction continued without interruption, the court answered the question in the negative. *Id.*[7] Millard does not contest the fact that he was brought to this jurisdiction pursuant to a writ of habeas corpus ad prosequendum. Facially, that would seem to end the matter. However, other factors are present in this case which implicate other considerations and portend a different result.

■ First, appellant asserted in his verified petition that it was the District of Columbia which first acquired jurisdiction over him on January 25, 1980 when he was arrested pursuant to a criminal complaint filed in the felony case which resulted in his present sentence. He also averred that at the time of his arrest in the District of Columbia, there were no outstanding warrants or detainers for him. Contrary to appellant's verified petition, the government represented that the warrant from Maryland, which resulted in appellant's appearance before the Maryland court on February 26, 1980 and his voluntary return to that state, antedated his felony arrest in the District of Columbia. The record contains no evidence supporting the government's assertion, and the trial court did not hold a hearing to resolve the disputed issue raised by the parties' opposing pleadings.[8]

7. In *Crawford,* the government officials arranged for Crawford to receive credit against his Virginia sentence for the whole time he was incarcerated by the District of Columbia. 191 U.S.App.D.C. at 172 n. 3, 589 F.2d at 695 n. 3. It was also agreed that Crawford would be given credit for service of his parole back up time, which otherwise would have had to await completion of his sentences in both jurisdictions. *Id.* at 171 n. 2, 589 F.2d 694 n. 2.

8. Of course, it is a matter of which the trial court could take judicial notice from the records in the pertinent cases, *i.e., United States v. Millard,* SP–273–80, and *United States v. Millard,* F–381–80. There is no indication in the record or the trial court's order that it did so, and no

The significance of which sovereign, first acquired jurisdiction can be found in the so-called *Zerbst* rule. This is a rule of comity under which the state which first arrests an individual cannot be deprived of that person's custody without its consent. *Zerbst v. McPike,* 97 F.2d 253, 254 (5th Cir.1938); *see also Ponzi v. Fessenden,* 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922); [9] *Gillman v. Saxby,* 392 F.Supp. 1070, 1072–73 (state first arresting the individual gains prior jurisdiction). Thus, appellant argues, when his bond was revoked after his arrest on the Maryland warrant, he was detained by two sovereigns, the District of Columbia having first priority. Therefore, appellant argues, he was not before the Superior Court simply by reason of its subsequent issuance of a writ of habeas corpus ad prosequendum, and the District of Columbia never surrendered its prior jurisdiction. Without the requisite factual findings by the trial court, we cannot resolve the question appellant presents. In any event, we need not do so because appellant relies upon other persuasive authorities in support of his position. We turn next to their consideration.

### III.

Appellant relies principally upon the decision in *United States v. Croft,* 450 F.2d 1094 (6th Cir.1971), a case bearing substantial factual similarity to the case before this court. In *Croft,* the appellant was sentenced for federal offenses before being indicted, convicted, and sentenced by the state court to a term of imprisonment to run concurrently with his federal sentence. *Id.* at 1095. Croft had been arrested and held for the state offenses while on bond for the federal charges; therefore, the federal court secured his presence from the state by means of a writ of habeas corpus ad prosequendum. *Id.* Croft was sent first to the state prison instead of to the federal penitentiary, and he was not released and taken into custody by the United States Marshal until he was paroled from his state sentence some ten months later. *Id.* at 1095–96. The *Croft* court determined that appellant was entitled to a credit upon his federal sentence for the time he spent in state prison. *Id.* at 1099. Pertinent to the court's decision was that the disobedience of a ministerial officer (there the United States Marshal) to the mandate of the court, requiring commitment of the prisoner, could not suspend the running of the federal sentence. *Id.* at 1097 (citing *In re Jennings,* 118 F. 479, 482 (E.D.Mo.1902)).

In an earlier case, upon which the *Croft* court also relied, the Ninth Circuit held, under similar circumstances, that the prisoner's sentence commenced at the time of commitment and custody rather than the date of actual commitment which followed the prisoner's parole by the state authorities. *Smith v. Swope,* 91 F.2d 260, 262 (9th Cir.1937). Also central to the *Croft* court's decision was that jurisdictional priority rests upon principles of comity and that the state court had recognized the prior jurisdiction of the federal court by imposition of a concurrent sentence. *Croft, supra,* 450 F.2d at 1099. Therefore, the Sixth Circuit held that Croft's sentence ran from the date of the commitment order rather than the date of his parole from the state sentence and transfer to the federal authorities. *Id.*

In this case, as in *Croft,* the Maryland court imposed a sentence concurrent to the sentence imposed first by the Superior Court. This sentence structure demonstrates the Maryland court's recognition of the priority of the District's sentence. *See id.* Only if appellant were transferred

---

hearing was held to resolve this disputed factual question.

**9.** The *Zerbst* court found support for its first arrest rule in the Supreme Court's decision in *Ponzi, Zerbst, supra,* 97 F.2d at 254. In *Ponzi,* the Supreme Court expressed the principle in this way:

The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose. 258 U.S. at 260, 42 S.Ct. at 310.

back to the federal authorities could the sentencing intention of the state court be carried out. Moreover, the Maryland officials here acknowledged, although belatedly, their error in retaining appellant in the state prison. At the same time, the judgment and commitment order entered for appellant in the Superior Court required appellant's commitment to the custody of the Attorney General, or his or her authorized representative, for imprisonment.[10] While there is no specification that the order was to be executed forthwith, there is no indication that deferral of the commitment date was authorized by the court. In fact, appellant was placed in the Lorton facility, where he is currently serving his sentence under the same commitment order, for nine days before his transfer to the Maryland authorities.[11]

■ "The relevant touchstone in determining whether [a prisoner] has commenced serving his sentence is whether he was delivered to executive custody for that purpose." *Green, supra* note 11, 363 A.2d at 981; *Bell v. District of Columbia Dep't of Corrections,* 403 A.2d 330, 332 (D.C. 1979) (federal sentence begins after declaration of prison term and receipt of prisoner at facility designated for service of sentence); *see also United States v. Kanton,* 362 F.2d 178, 179–80 (7th Cir.1966), *cert. denied,* 386 U.S. 986, 87 S.Ct. 1298, 18 L.Ed.2d 239 (1967). The facts in this case appear to fall within the strictures of the

rule set forth in *Green* and *Bell.* Appellant's prison term was set by the court with an order for commitment, and appellant was confined thereafter in this jurisdiction for the next nine days, until the United States Marshal transported him back to Maryland.[12] Thus, in two critical respects this case is also like *Croft* upon which appellant relies: (1) the state recognized the prior jurisdiction of the District of Columbia authorities over appellant by the imposition of a concurrent sentence; and (2) the Superior Court entered a judgment and commitment order providing for appellant's commitment for service of sentence which was interrupted because the United States Marshal, apparently without further order of the Superior Court and contrary to the order of commitment, arranged for appellant's transfer back to Maryland. *See Croft, supra,* 450 F.2d at 1099. Thus, *Croft* provides persuasive authority for appellant's position.

■ *Crawford,* the D.C. Circuit case relied upon by the trial court and by the government on appeal, is factually distinguishable from this case in important respects.[13] Unlike this case, in *Crawford* the appellant was convicted and sentenced in the state court before he was transferred to the District of Columbia pursuant to a writ of habeas corpus ad prosequendum to face new charges. *See Crawford, supra,* 191 U.S.App.D.C. at 171, 589 F.2d at 694.[14]

10. In the District of Columbia, persons convicted of crimes and sentenced to terms of imprisonment in excess of one year are committed to the custody of the Attorney General who may designate a suitable jail or penitentiary for the sentence. D.C.Code § 24–402 (1989).

11. This case can be distinguished from *Green v. United States,* 363 A.2d 979 (D.C.1976) where we rejected the appellant's contention that he commenced serving his sentence when delivered to the custody of the United States Marshal in the courthouse. There we held that the cellblock in the court is not a jail or place of detention which marks the commencement of sentence within the meaning of 18 U.S.C. § 3568. *Id.* at 981.

12. We are mindful that the writ of habeas corpus ad prosequendum issued to the state of Maryland provided for appellant's return upon

completion of the arraignment. However, the District of Columbia, which may well have been the first jurisdiction to arrest appellant, did not return him until after his sentencing and commitment to Lorton. While the sending state's jurisdiction ordinarily continues uninterrupted for the duration of the writ, *see United States v. Brown,* 753 F.2d 455, 456 (5th Cir.1985), sovereignties may waive or surrender their priority jurisdiction. *See Bullock v. State of Mississippi,* 404 F.2d 75, 76 (5th Cir.1968).

13. Since *Crawford* was decided in 1978, we are not bound to follow it. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) (this court is not bound by decisions of the United States Court of Appeals for the District of Columbia Circuit rendered after February 1, 1971).

14. The effect of Crawford's parole back up time in the District of Columbia was not in issue.

The state court was the first to issue its mittimus or commitment in *Crawford,* while here the Superior Court was the first to do so. In *Crawford,* the second sentencing jurisdiction mandated a consecutive sentence. *Id.* at 172, 589 F.2d at 695. Here, the second sentencing jurisdiction not only prescribed a concurrent sentence, but also admitted its error of failing to return appellant to the federal authorities, which prevented its automatic effectuation. Even if we were to follow the rules distilled from *Crawford,* we could not do so without recognition of these differences and the impact of the distinguishing facts on the outcome. Such distinctions are accommodated in the decisions in *Croft, Gillman,* and *Kiendra v. Hadden,* 763 F.2d 69, 72–73 (2nd Cir.1985) in a way which carried out the intentions of both sentencing courts and which did not deprive the prisoner of the benefits of the concurrency intended.

Moreover, which court has prior jurisdiction over the person of an accused is a matter of comity between the sovereigns. *Ponzi, supra,* 258 U.S. at 260–61, 42 S.Ct. at 310–11; *Flick, supra,* 887 F.2d at 781; *Floyd v. Henderson,* 456 F.2d 1117, 1119 (5th Cir.1972). It is well established that the first sovereign to acquire jurisdiction can by agreement surrender its prisoner to the second sovereign for prosecution and for execution of sentence. *Causey v. Civiletti,* 621 F.2d 691, 694 (5th Cir.1980); *Bullock, supra* note 12, 404 F.2d at 75–76. The sovereignties are free to agree as to which of their sentences will be served first. *Causey,* 621 F.2d at 694. That such a surrender or agreement for priority of the District of Columbia's charges occurred here is evident from a number of facts.[15] First, appellant was retained by the District of Columbia, apparently without objection by the state of Maryland, long after the time specified for his return in the writ of habeas corpus ad prosequendum. While the writ indicated that appellant would return to Maryland after arraignment, he remained in the District of Columbia for prosecution, sentencing, and for several days thereafter at Lorton, a prison facility used to house District of Columbia prisoners serving sentences. *See United States v. District of Columbia,* 703 F.Supp. 982, 989 (D.D.C.1988) (citing Act of September 1, 1916, 39 Stat. 711); *see also* D.C.Code § 24–442 (1989). The judgment and commitment order under which appellant was held provided for his commitment to the Attorney General for imprisonment and that delivery of a copy to the United States Marshal "shall serve as the commitment of the defendant." The copy was delivered to the United States Marshal or his deputy according to court records, and there is no dispute that appellant remained incarcerated in the District of Columbia for nine days thereafter. The state of Maryland's acquiescence in the District of Columbia's priority jurisdiction is also evidenced by its imposition of a concurrent term of incarceration, its written admission of its error in failing to return appellant to the District of Columbia immediately, and its return of appellant before completion of the Maryland concurrent sentence when it discovered the error. *See Croft, supra,* 450 F.2d at 1099. Under these particular circumstances, the consensual arrangements intended and partially accomplished should be given full effect.

Equitable considerations also support the result we reach. Even the Fifth Circuit, which generally has followed *Crawford* in interpreting 18 U.S.C. § 3568,[16] acknowledges that there may be circumstances which may require the equitable determination that a sentence began at a date earlier than prescribed in 18 U.S.C. § 3568. *See Causey, supra,* 621 F.2d at 694–95. The

191 U.S.App.D.C. at 171 n. 2, 589 F.2d at 694 n. 2.

**15.** We consider the record evidence supporting agreement for the priority of federal jurisdiction without regard to whether appellant was arrested first in the District of Columbia. That unresolved factual issue is not essential to consideration of the surrender or agreement issues.

**16.** *See, e.g., United States v. Brown,* 753 F.2d 455, 456 (5th Cir.1985).

*Causey* court did not decide the issue, but it suggested that the only situation where it would adopt the *Croft* court's approach would be where the United States Marshal flagrantly disobeyed an order of commitment thereby requiring the equitable assertion of another start date for sentence. *Id.* Here, as in *Croft*, there is evidence that the commitment order was disregarded by the authorities when appellant was transferred and not returned by the United States Marshal's service without further order of court, in spite of the terms of the mittimus. *See Croft, supra,* 450 F.2d at 1097. The Maryland authorities were also negligent in failing to arrange for appellant's return to the District of Columbia in order to assure the concurrency of sentence ordered by the Maryland court. These circumstances, which would force appellant to serve an extra five years not intended by either sentencing court, were brought about through no fault of appellant. *See id.; see also United States v. Merritt,* 478 F.Supp. 804, 806–07 (D.D.C.1979).[17]

For all of the foregoing reasons, we conclude that appellant is entitled to credit against his Superior Court sentence for the time he spent in the Maryland prison serving his concurrent Maryland sentence. Appellant also seeks pretrial detention credit pursuant to 18 U.S.C. § 3568 based upon the claim that he was being held in connection with the District of Columbia charges once his bond was revoked in the District of Columbia. The record on appeal is inadequate to determine if and when appellant's bond was revoked and the amount of pretrial credit, if any, to which appellant may be entitled. Accordingly, we reverse and remand for further proceedings for a full determination of credits due appellant, consistent with this opinion.

*Reversed and remanded.*

In re I.B.

In re S.B.

* * * * *

A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted—the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his reincarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.'"

*Id.* (quoting *Piper v. Estelle,* 485 F.2d 245, 246 (5th Cir.1973)).

---

**17.** While factually different from the case before the court, the *Merritt* case applied some of the principles enunciated in *Croft* and outlined some of the pertinent criteria in granting a prisoner credit upon a federal sentence for time spent in Patuxent, Maryland. 478 F.Supp. at 806–07. The following passages from the opinion are instructive:

It is well settled that when a prisoner is released prior to service or expiration of his sentence through no fault or connivance of his own, and the authorities make no attempt over a prolonged period of time to reacquire custody over him, he may be given credit for the time involved, and he will not be required at some later time to serve the remainder of his sentence. (footnotes and citations omitted).